THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* DONALD C. ELFE, Appellant.

Third Department, July 13, 1971.

210

*Alan Francis Ruf, Public Defender,* for appellant.

*James C. Steenbergh, District Attorney,* for respondent.

COOKE, J. This is an appeal from a judgment of the County Court of Greene County, rendered August 15, 1969, convicting defendant of robbery in the first degree, three counts of assault in the third degree, three counts of possession of weapons and dangerous instruments and appliance (Penal Law, § 265.05, subd. 2) and criminal possession of stolen property in the first degree.

During the midafternoon of July 19, 1968, a Fort Lee, New Jersey automobile salesman reported to the local police that two men earlier had taken a red Pontiac from the lot for a tryout and had failed to return. At about 9:30 that evening State Trooper Gallelli, noticing such a vehicle proceeding northerly with difficulty along the Thruway at a point in Greene County, motioned it to the side of the road. Defendant Elfe was the operator and Thomas G. Howard, subsequently tried jointly with him, was a passenger therein.

Gallelli testified: that, after assisting with the vehicle, he asked for its registration and was told by Elfe that it was in Pennsylvania; that, after informing him that he was going to be arrested for driving an unregistered motor vehicle, after obtaining the vehicle's identification number from a plate on a door post and after stating that he would check it through a computer to be sure the car was not stolen, Gallelli was confronted by Howard who drew what appeared to be a .45 calibre revolver on him and said, " This it it "; that immediately previous Gallelli saw Elfe six or seven feet to his rear; that, as Gallelli took a step back, he heard and saw Howard cock the revolver and Gallelli heard the snap go on his safety strap and his loaded Smith & Wesson .357 Magnum revolver was taken from him to the rear; that, after Gallelli was ordered at gunpoint towards some bushes located across the ditch running along the shoulder, Howard then had the trooper's

pistol in his hand and the one which he had drawn in his belt; that Howard took Gallelli's handcuffs and manacled the latter's hands behind his back; that after being told to get down and being shoved and while lying upon his stomach, Gallelli's gun belt, identification card, badge, shield, pocket knife and blackjack were taken; that upon departure of Elfe and Howard, Gallelli managed to get back in his patrol car and radioed for assistance; and that Howard returned, ripped the microphone from the car, and struck the trooper across the cheek with his own revolver so that he lost consciousness.

Defendant was accused, by the first indictment count, and found guilty of violating subdivision 2 of section 160.15 of the Penal Law which stipulates that " a person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime * * * is armed with a deadly weapon. " The count, as amplified by the bill of particulars, charges that the deadly weapon was a .45 calibre Smith & Wesson. A " deadly weapon ", among other things, means " any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged " (Penal Law, § 10.00, subd. 12; cf. *People* v. *Davis*, 29 A D 2d 556; *People* v. *Gordon*, 19 A D 2d 828). Since there was testimony that said gun was fully loaded when removed from the car, that it had been test fired, would discharge and was operating, despite the fact that the cylinder had to be rotated manually, the jury had every right to find that it qualified as a deadly weapon.

Although there was no testimony that Elfe personally struck the trooper, there was adequate evidence from which the jury could find that he acted " with the mental culpability required for the commission " of assaultive acts engaged in by Howard (Penal Law, § 20.00). Proof that the trooper's revolver was removed from the rear while Howard held a gun on him, that Elfe had been seen immediately before that behind the trooper, that no one else was observed at the scene and that the trooper's revolver thereafter had been delivered to Howard, as well as the prompt return of Howard to the patrol car after he and Elfe had driven off in a car operated by Elfe, afforded an adequate basis on which the jury could find that Elfe took a guilty part in and intentionally aided Howard in the commission of the assault (cf. *People* v. *Weis*, 32 A D 2d 856, 858, cert. den. 397 U. S. 1047; *People* v. *Beaudet*, 31 A D 2d 705).

The second, third and fourth counts of the indictment charged defendant with assault in the second degree in violation of subdivisions 2, 3 and 6 of section 120.05 of the Penal Law, in relation to each of which defendant was found guilty of assault in the third degree. The three charges were separable and involved three different types of conduct, even though arising out of the same transaction, but, in any event, defendant was not prejudiced since his sentences were concurrent, not consecutive (Penal Law, § 70.25, subd. 2; Code Crim. Pro., §§ 279, 279-a, 444, 445; *People ex rel. Maurer* v. *Jackson,* 2 N Y 2d 259, 266, 268-270; *People* v. *Richardson,* 36 A D 2d 25; cf. *People* v. *Delorio,* 33 A D 2d 350).

As to the .45 and .357 calibre revolvers, part of the case against defendant was the presumption under subdivision 2 of section 265.15 of the Penal Law. This presumption was not rebutted by the finding of these pistols under the passenger seat which had been occupied by Howard since they were found in the stolen vehicle, not on Howard's person. Furthermore, as indicated previously, there was proof, independent of the presumption, from which the jury could infer that defendant possessed the .357 calibre weapon after he took it from the trooper's holster.

Trooper O'Brien testified to events which occurred in a motel parking lot after Elfe's apprehension and approximately within an hour after the alleged crimes were committed. He stated: that, while Elfe was standing facing the Pontiac with his hands on it, he was advised that he was under arrest; that he, O'Brien, read out loud the four *Miranda* warnings from a card, item by item; that he asked Elfe if he wished a lawyer and the latter responded that he did not, that he did not need one; that Elfe said he could read the card and, upon its being placed in front of him, he read it aloud; and that, upon being asked if he fully understood his rights, Elfe said that he did. Upon searching the trunk of the vehicle which Elfe had been driving, O'Brien found a suitcase and, upon inquiry, Elfe stated it was his. Upon discovering a fully loaded .32 calibre revolver in an envelope in the suitcase, O'Brien asked whose gun it was; Elfe at first did not answer and, upon being asked again, replied that it was his.

The rendering of the warnings was not met by mere silence on defendant's part nor was Elfe's admission made after a lengthy interrogation or incommunicado incarceration. Having been given the full *Miranda* warnings twice and having stated immediately that he understood them and having declared that he neither desired nor needed an attorney, there was a sufficient basis for finding, under the existing facts and circumstances, that

a knowing and voluntary waiver of the privilege against self incrimination and the right to counsel was made (*People* v. *Bodie,* 16 N Y 2d 275; *People* v. *Ruiz,* 34 A D 2d 908; *People* v. *Davis,* 33 A D 2d 762; cf. *People* v. *Matthews,* 25 N Y 2d 870). The mere fact that police officers were present and that defendant was under armed guard, without any showing of wrongful coercion, brutality or other impropriety, does not negate such a waiver (cf. *People* v. *Stephen J. B.,* 23 N Y 2d 611, 613; *People* v. *Hill,* 17 N Y 2d 185, 190).

A person is guilty of criminal possession of stolen property in the first degree (1) when he knowingly possesses stolen property, (2) with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof, and (3) when the value of the property exceeds one thousand five hundred dollars (Penal Law, § 165.50). The automobile having been taken with permission for the limited purpose of a test drive and its license plates having been changed without the owner's knowledge or permission, such obtaining of it (Penal Law, § 155.00, subd. 2) and such withholding beyond a reasonable time and distance classified the automobile as stolen property (Penal Law, §§ 155.35, 155.05, subd. 1; cf. *People* v. *Lammerts,* 164 N. Y. 137, 144). Since the recent and exclusive possession of the fruits of a crime, if unexplained or falsely explained, justifies the inference that the possessor is a criminal (*People* v. *Moro,* 23 N Y 2d 496, 500), Elfe's unexplained possession of the Pontiac, combined with the presumption of subdivision 1 of section 165.55 of the Penal Law, was sufficient for the jury to find him guilty of criminal possession of stolen property.

The judgment should be affirmed.

HERLIHY, P. J., STALEY, JR., SWEENEY and SIMONS, JJ., concur.

Judgment affirmed.