■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. PRESTON LAY, JR., Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. HANNIBAL THOMAS, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. WALLACE MARKS, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. EBB 'GLENN, Appellant.— Judgments of conviction, Supreme Court, New York County, rendered June 9, 1971, after trial to a jury, affirmed. The evidence was sufficient, if accepted by the jury, to justify the verdict that defendants were guilty beyond a reasonable doubt of the crimes of which they were convicted. The fact that defendants were acquitted of the conspiracy counts is no reason to reject conviction of the counts of possession of contraband. Even were the dispositions inconsistent — and they are not — it is a jury's traditional right to be inconsistent. As to all the convictions except those of Glenn for possession of bombs, and Lay and

Thomas of possession of a rifle, we are unanimous in affirming. As to the counts on which we are divided, there seems to be no doubt that the convictions should stand. Intent to possess contraband for unlawful purposes requires no conspiracy to be shown. The requisite intent in respect of possession of the rifle by Lay and Thomas is established in the dissent itself: "Thomas gave it to Lay to fit with a silencer."; "It is true that the defendants had conversations about future use of the rifle". We are unaware of any requirement of law that the unlawful intent to use may be established only by proof that the intent to use unlawfully must be for *immediate, contemporaneous* use. Nor do we know of any principle of law to the effect that an operable rifle, i.e., one capable of being loaded and discharged, may be considered a deadly weapon or a dangerous instrument only if actually loaded. As to the possession by Glenn of bombs, the dissent agrees that "Glenn supplied one ingredient for the bomb." The proof was to the effect that he did so with intent that it be so used. This is sufficient to make Glenn an accessory (Penal Law, § 20.00) to possession by another, which Glenn facilitated. Indeed, the only citation in the dissent striking at the theory of "accessory-to-possession" is itself of a dissent. Concur — Markewich, J. P., McNally, Tilzer and Eager, JJ.; Murphy, J., dissents in part as to [two] appeals and dissents as to [one] appeal in the following memorandum: I disagree and would reverse Glenn's conviction of possession of bombs (Penal Law, § 265.05, subd. 1) and the convictions of Lay and Thomas of possessing a rifle with intent to use it unlawfully against another (Penal Law, § 265.05, subd. 9). With the assistance of two undercover agents, all four defendants (and two others, one of whom was acquitted and the charges against the other dismissed at the close of the prosecution's case) were indicted for conspiring to murder, rob and burglarize and for possession of weapons. After a lengthy jury trial all four appellants were acquitted of the conspiracies and convicted of possession of bombs, Lay and Thomas were also convicted of possession of an M-1 rifle and Marks was also convicted of possessing a loaded pistol. The entire thrust of the prosecution, which was rejected by the jury, was to establish the existence of the four alleged conspiracies. In connection with the possession counts, the trial court charged that, in the event the conspiracies were established, all of the defendants could be found guilty if any one of them was proven guilty of possessing a weapon in furtherance of any one or more of said conspiracies. Alternatively, the jury was also instructed that they could find any defendant not physically possessed of a weapon guilty as an accomplice. This alternate theory of culpability, in my opinion, was error since the crime of accessory-to-possession does not exist. (See dissenting memorandum in *People* v. *De Leon,* 38 A D 2d 900.) Moreover, implicit in the jury's verdict in this case is their rejection, also, of such crime. Only defendants Lay and Thomas were convicted of possessing the M-1 rifle on May 10, 1968, when, in the presence of Glenn, Thomas gave it to Lay to fit with a silencer; and only Marks was convicted of possessing a loaded pistol on May 9, 1968, although he exhibited it to Lay, Glenn and Thomas. A seeming contradiction is the conviction of all four defendants of possession of the bombs on May 16, 1968, especially the conviction of Glenn who was not even present in Thomas' apartment on that date. However, the trial testimony disclosed that Lay, who made the two bombs, passed them around, that they were handled by Thomas and Marks and were at all times in the reach of any one of them. (Cf. *People* v. *Russo,* 278 App. Div. 98.) Accordingly, a factual question was presented to the jury and all three were properly found guilty on this charge. Since the homemade bombs were made, in part, from "ashcan" firecrackers furnished by Glenn, the jury undoubtedly

convicted him because of his active participation in their production. However, in view of the fact that all four defendants were charged with *possession* of two bombs and not with the *manufacture* of a proscribed weapon (compare Penal Law, § 265.10, subd. 1), the conviction of Glenn on this count cannot be sustained. At best Glenn supplied one ingredient for the bomb. He never saw, touched or was in the area of the completed product. To find him guilty of possession of a bomb under these circumstances is to say he possessed an illegal object which he was not even aware had been assembled or was completed. How then could he, as an accessory, be "acting with the mental culpability required for the commission thereof"? (Penal Law, § 20.00.) Further, the court erred by charging: "For example, if you are satisfied beyond a reasonable doubt that the defendant Glenn knowingly and intentionally supplied the ashcans which were used to make the bombs, that would constitute aiding in the possession of the bombs by Lay." This was incorrect under any of the People's theories; yet was the basis for the jury's conviction of Glenn on this count. Nor can the convictions of Lay and Thomas of violating subdivision 9 of section 265.05 of the Penal Law; be permitted to stand. There is no evidence that on May 10, 1968 (the date charged in the indictment) Thomas' M-1 rifle was loaded or that there was ammunition for it. In such circumstance, it was neither a "deadly weapon" (Penal Law, § 10:00, subd. 12) nor a "dangerous instrument" (Penal Law, § 10:00, subd. 13; see Practice Commentary following Penal Law, § 10:00, McKinney's Cons. Laws of N. Y., Book 39, p. 16). Applying the definition charged by the court that a "dangerous instrument" includes "any instrument, article or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious injury," this rifle was not a dangerous instrument. There was no evidence that it was used or attempted to be used against anyone, nor evidence that anyone was threatened with the rifle on the day charged. It is true that the defendants had conversations about future use for the rifle, but to be guilty under this charge all the elements must be present and proven for the date charged. Who was the complainant against whom the rifle was used or threatened to be used on May 10, 1968? There is no one who so testified, nor do the undercover officers, who were the only witnesses, testify that it was used or threatened to be used against anyone on said date. Thomas merely took out the unloaded rifle and handed it to Lay who put it in a box and took it out. Moreover, there was no evidence adduced that on such date said defendants intended "to use the [rifle] unlawfully against another" (Penal Law, § 265.05, subd. 9). While it may be noted in such connection that the possession of a weapon (assuming this unloaded rifle may be classified as such) is presumptive evidence of intent to use the same unlawfully against another (see Penal Law, § 265.15, subd. 4), the statutory presumption was not charged, only actual intent. As above noted, however, no evidence of such actual intent was introduced upon the trial. Since I find no merit in appellants' other assignments of error I would modify the judgment appealed from to the extent of reversing Glenn's conviction of possession of bombs and the convictions of Lay and Thomas of possession of the M-1 rifle; and otherwise affirm.