**Joseph FOURNIER, Plaintiff-Appellee,**

v.

**Eugene S. LeFEVRE, Superintendent, Clinton Correctional Facility, Defendant-Appellant.**

**Cal. No. 773, Docket 83–2344.**

United States Court of Appeals, Second Circuit.

Argued Jan. 19, 1984.

Decided May 10, 1984.

---

Joseph M. Latino, Asst. Dist. Atty., White Plains, N.Y. (Carl A. Vergari, Dist. Atty., of Westchester County, and Gerald D. Reilly, Asst. Dist. Atty., White Plains, N.Y., of counsel), for defendant-appellant.

Stanley Neustadter, New York City, for plaintiff-appellee.

Before FEINBERG, Chief Judge, and VAN GRAAFEILAND and KEARSE, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Appellant, the penal custodian of appellee, Joseph Fournier, appeals from an order of the United States District Court for the Southern District of New York (Broderick, J.), which conditionally granted appellee's section 2254 petition for a writ of habeas corpus because the State trial judge gave a *Sandstrom* charge on the issue of presumed intent. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Pending appeal, the district court stayed that part of its order which directed Fournier's release if the State did not move the indictment for retrial within sixty days. We affirm in part and reverse in part.

On October 25, 1975, Joseph Fournier twice visited the Le Pastis restaurant in White Plains, New York. On the first visit, Fournier paid his bill with a stolen $50 traveler's check, which he endorsed with the name Harold Larson. On his second visit, he gave the bartender another stolen check, this one endorsed with the name Harold Dawson. When Fournier observed the bartender and the restaurant manager comparing the two checks, he ran from the restaurant.

The bartender ran after Fournier, while the manager went for the police. Soon, Officer Vincent Paterno replaced the bartender in the pursuit of Fournier. Paterno eventually chased Fournier into a parking lot, where he yelled to Fournier, who was about to climb a fence, "Police Officer, lay on the ground." Fournier turned and fired two shots. Paterno, unhurt, returned the fire and wounded Fournier in the leg. Fournier then was placed under arrest.

He was indicted and charged with attempted murder in the first degree, N.Y. Penal Law § 125.27, attempted assault in the first degree, *id.* § 120.10, criminal possession of a weapon in the second degree, *id.* § 265.03, and criminal possession of a weapon in the third degree, *id.* § 265.02. On July 26, 1977, following a jury trial in Westchester County Court, Fournier was convicted of criminal possession of a weapon in the second degree and attempted assault in the first degree.[1]

---

1. The Appellate Division Second Department affirmed, 70 A.D.2d 491, 421 N.Y.S.2d 368 (1979), and the New York Court of Appeals denied leave to appeal, 48 N.Y.2d 1030, 425 N.Y.S.2d 1049, 402 N.E.2d 150 (1980).

Fournier, who testified, admitted the incidents at the restaurant and the resulting chase. However, he denied knowing that Paterno was a police officer and that he intended to hit Paterno when he fired his gun. Fournier testified that he had fired only to frighten his pursuer.

Q So you thought you were scaring a bartender; is that your testimony, Mr. Fournier?

A Someone, yes. (Tr. at 147)

Accordingly, although there was a dispute on the trial as to whether Fournier intended to hit his pursuer when he fired, it was undisputed that Fournier intended to frighten him. Fournier testified on both direct and cross that he intentionally fired his revolver with that end in mind. Despite this conceded fact, the district court, in a Memorandum Order dated October 12, 1983, vacated Fournier's conviction on both the criminal possession and attempted assault counts because the State trial court had instructed the jury that there was a rebuttable presumption that a person intends the natural and logical consequences of his acts. We conclude that, as to the criminal possession count, the writ should not have been granted.

Section 265.03 prohibits the possession of a loaded firearm "with intent to use the same unlawfully against another." This section and section 265.01 are the successors of former section 1897 of the Penal Law, which proscribed the carrying or possessing of a dagger, dirk, dangerous knife, razor, stiletto, imitation pistol, machinegun, sawed off shot-gun, or any other dangerous or deadly instrument or weapon, "with intent to use the same unlawfully against another." [2] As is apparent from section 1897's inclusion of imitation pistols within the definition of weapon, the New York Legislature did not intend the phrase "use the same unlawfully against another" to encompass only such use as was intended to cause physical harm to another.

**2.** Section 265.01(2) deals with daggers, dangerous knives, dirks, razors, stilettos, imitation pistols, and shirkens, while section 265.03 deals with machine-guns and loaded firearms. Both,

*People v. Judiz*, 38 N.Y.2d 529, 532, 381 N.Y.S.2d 467, 344 N.E.2d 399 (1976) (per curiam)

"A toy gun which would fool nobody is still illegal under the State law if used with criminal intent."

*Matter of Don R.B.*, 66 Misc.2d 279, 281, 320 N.Y.S.2d 813 (1971)

"[A]n instrument that had no mechanism whatsoever for firing might be an imitation pistol even though it was not in fact dangerous to any one."

*People v. Simons*, 124 Misc. 28, 30, 207 N.Y.S. 56 (1924)

"If a broken and inefficient pistol be drawn and pointed at another in a quarrel this production of it to make a hostile demonstration violates the law."

The New York courts, therefore, have interpreted the phrase "use the same unlawfully against another" in a literal fashion, so that it encompasses any intended use which is unlawful. *See People v. Bracey*, 41 N.Y.2d 296, 302, 392 N.Y.S.2d 412, 360 N.E.2d 1094 (1977) (possession with intent to commit robbery); *People v. Brinson*, 55 A.D.2d 844, 390 N.Y.S.2d 335 (1976) (possession with attempt to commandeer an automobile); *People v. Lay*, 39 A.D.2d 904, 905, 334 N.Y.S.2d 398 (1972) (possession of an unloaded rifle while fitting it with a silencer).

Magistrate Buchwald, to whom Judge Broderick submitted this matter for report and recommendation, correctly interpreted section 265.03. In her Supplemental Report and Recommendation, she said:

In analyzing petitioner's argument, it must be remembered that the intent charge concerned the presumption that a person intends the natural and logical consequences of his acts. The constitutional difficulty with such a charge derives from the possibility that it may shift to the defendant the burden of proof when intent is an issue. With re-

however, retain former section 1897's modifying phrase "with intent to use the same unlawfully against another."

spect to the weapons count, however, intent was not an issue: petitioner admitted firing a gun in his possession in downtown White Plains to warn and scare off his pursuers. (Tr. 129,. 131, 141; *see also* Brief for Petitioner at 17). By virtue of those admissions, *i.e.*, by admitting the deliberate discharge of the weapon, petitioner eliminated the intent issue from the weapons count.

It is apparent, however, that the district court believed Fournier would not be guilty of violating section 265.03 unless he fired with the intention of hitting Paterno. In rejecting Magistrate Buchwald's recommendation, the district court said, "Even though petitioner admitted discharging a firearm, he denied that he intended to use it against anyone, and asserted that he discharged it to let his pursuers know he had a weapon." He then concluded, "Having found that the issue of petitioner's intent was not foreclosed by his admission that he discharged the gun, it follows that the instructions as to intent were unconstitutional with respect to the weapons count." The above quoted statements demonstrate a misunderstanding of the statute. One who intends to rob a store with the aid of a gun, *People v. Bracey, supra,* 41 N.Y.2d 296, 392 N.Y.S.2d 412, 360 N.E.2d 1094, usually expects to frighten the storekeeper, not to shoot him. One who intends only to commandeer an automobile, *People v. Brinson, supra,* 55 A.D.2d 844, 390 N.Y. S.2d 335, does not anticipate shooting the driver.

In *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 978, 74 L.Ed.2d 823 (1983), Justice Blackmun, writing for four members of the Court, stated that "a *Sandstrom* error may be harmless if the defendant conceded the issue of intent." Justice Powell, writing for four dissenting judges, stated that "there may be many cases in which the facts and circumstances so conclusively establish this element that the instruction is wholly superfluous." *Id.* at 982. Whatever test is used, we are satisfied that, insofar as the criminal possession count is concerned, the error arising out of the presumed intent charge was

harmless and that, as to that count, Fournier was not deprived of his constitutional right to a fair trial. *See Krzeminski v. Perini,* 614 F.2d 121, 125 (6th Cir.), *cert. denied,* 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980).

During the entire history of this litigation, Fournier has contended that he fired his revolver only for the purpose of frightening his pursuers. Indeed, his application for habeas corpus relief was based upon his sworn statement that "[he] intended merely to frighten [his] pursuers so that [he] could successfully elude them." Like the district court, Fournier believes that section 265.03 is not violated unless a gun is fired with the intention of harming someone. That simply is not the law. Except when acting in self-defense, New York residents are not permitted to discharge firearms in public places or in any place where there is any person to be endangered thereby. *See* N.Y. Penal Law § 265.35.

Fournier's defense that he was merely trying to scare his pursuer, therefore, while it could stave off a conviction for attempted murder or attempted assault, was no defense against a charge of possession of a weapon with intent to use it unlawfully against another. As to the weapons charge, intent was not a genuine issue since in that context the intention claimed by Fournier was just as unlawful under New York law as the intent he disclaimed. In short, we conclude that the *Sandstrom* error was harmless with regard to the weapons count since Fournier's testimony created an issue not as to whether or not his act was intentional, but only as to which of two intents he possessed, either of which would satisfy the statute under which he was charged.

The instructions of the trial court did not elaborate on the nature of the unlawful intent required for a violation of § 265.03. Fournier, however, did not object to the court's failure to elaborate, and has never claimed that this omission was error. Recognizing that the Fourteenth Amendment permits States to allocate functions

as between judge and jury as they see fit, *Spencer v. Texas*, 385 U.S. 554, 560, 87 S.Ct. 648, 651, 17 L.Ed.2d 606 (1967), *Stein v. New York*, 346 U.S. 156, 179, 73 S.Ct. 1077, 1090, 97 L.Ed. 1522 (1953), we are not prepared to hold sua sponte and seven years after appellee's conviction that the trial court committed constitutional error in submitting the weapons count to the jury in the unadorned language of the statute. *See United States v. Frady*, 456 U.S. 152, 162–69, 102 S.Ct. 1584, 1591–95, 71 L.Ed.2d 816 (1982); *Henderson v. Kibbe*, 431 U.S. 145, 154–57, 97 S.Ct. 1730, 1736–38, 52 L.Ed.2d 203 (1977); *Davis v. McAllister*, 631 F.2d 1256, 1260 (5th Cir.1980), *cert. denied*, 452 U.S. 907, 101 S.Ct. 3035, 69 L.Ed.2d 409 (1981). And were we to hold that such an error had been committed, we would again conclude that the error was harmless beyond a reasonable doubt, since a complete charge would have led the jury, in light of Fournier's admission of an unlawful intent to frighten, to convict on the weapons count whether it accepted the prosecution's version or the defendant's version.

Fournier's entire argument for habeas corpus relief from his criminal possession conviction is based on a misinterpretation of section 265.03. Established New York law amply supports the jury's verdict. That portion of the district court's order which vacates appellee's conviction on the criminal possession count is reversed.[3]

Although appellant requests this Court to reverse the district court's order in its entirety, appellant's arguments for reversal have dealt solely with the criminal possession count. This well may be because Fournier was given a sentence of seven and one-half to fifteen years on the possession count and a concurrent sentence of only three and one-half to seven years on the assault count. Since we see no reason

in this case to adjudge the merits of a holding that is not being challenged, we affirm that portion of the district court's order which vacates the conviction on the assault count.

That portion of the district court's order granting Fournier's petition for habeas corpus relief from the criminal possession conviction is reversed. That portion granting relief from the assault conviction is affirmed.

---

**3.** Because we conclude that the district court's misinterpretation of section 265.03 furnishes ample grounds for reversal of its holding on the criminal possession count, we see no reason to address the merits of the Appellate Division's holding that "when read as a whole, the trial court's instructions clearly indicated to the jury

that the burden of proof was borne at all times by the People, that the prosecutor was required to adduce proof beyond a reasonable doubt as to every element of each crime involved, and that such burden was not shifted to the defendant." 70 A.D.2d at 494, 421 N.Y.S.2d 368.