■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DELROY JOHNSON, Appellant.—Judgment of Supreme Court, Bronx County (Jerome Reinstein, J.), rendered March 1, 1985, convicting the defendant, after a jury trial, of murder in the second degree (felony murder) and robbery in the first degree and sentencing him to concurrent indeterminate terms of 25 years to life in prison and 12½ to 25 years in prison, respectively, is unanimously modified on the law, to reverse the second degree murder (felony murder) conviction and the matter remanded for a new trial on that count only; the judgment is otherwise affirmed.

The victim, Herbert Harriot, a drug dealer who sold marihuana out of apartment 3B at 282 East Gun Hill Road in the Bronx, died as a result of a gunshot wound to the head inflicted during an apparent robbery. Two other individuals, Devon Webb and Norman (also known as Teddy) Lannaman, who worked for Harriot, were in the apartment when the robbery took place. The defendant, Lannaman and the victim were all previously acquainted.

Prosecution witnesses Alvin Harriot, the deceased's brother, and Lannaman testified that Herbert Harriot and the defendant were together the night before the robbery in the deceased's car, and that the deceased told them that the defendant was going to bring a fresh supply of marihuana to the Gun Hill Road apartment the next day. The next morning,

December 1, 1983, at 9:00 A.M. the defendant and an unidentified woman arrived at the deceased's Gun Hill Road apartment where Webb and Lannaman had spent the previous night. The defendant asked for Herbert Harriot, and when he was informed that Herbert Harriot was not there he and his companion left. When defendant and the woman returned a few minutes later, defendant asked for a scale and then put a gun to Webb's head and ordered Webb and Lannaman to crawl into the bedroom at the rear of the apartment. Other individuals who Webb and Lannaman did not know entered the apartment along with the defendant's codefendant Errol Emanual. The witnesses could identify Emanual because he entered the bedroom where Webb and Lannaman remained, however the two witnesses could only hear what was going on in the rest of the apartment. Thus while they knew there were others in the apartment they could not tell how many individuals were there or whether defendant remained or had left the apartment.

Webb and Lannaman heard the door buzzer of the apartment ring and then heard the group of assailants exit the apartment. The two witnesses then heard gunshots and then heard Herbert Harriot scream. Carolyn Ferrall, a neighbor, looked out of the peephole in her door and saw five men and then heard a shot.

In written and videotaped statements the defendant stated that Lannaman had enlisted him in a plan to stage a robbery of the deceased's Gun Hill Road apartment. According to the statement, Lannaman would arrange a fake police raid on the premises so that there would be no weapons in the apartment for a while, and then the defendant would carry out the "robbery". The deceased's brother and Webb gave testimony corroborating the fact that such a "raid" did occur on the afternoon before the robbery. The defendant stated further that, while armed with a starter's pistol he, along with a female companion, entered the apartment on the date of the crime. The female accomplice signaled the other participants who then entered the apartment. The appellant claimed that he and the female companion then immediately left the apartment.

In the videotaped statement the defendant stated that he did not know that the other perpetrators had guns before they entered the apartment. However, the defendant maintained that the plan was simply to "defraud" the deceased out of some marihuana.

The trial court's refusal to grant the request of defense

counsel to submit the affirmative defense to felony murder to the jury was reversible error. The affirmative defense to the crime of felony murder is established in any prosecution of a defendant who was not the only participant in the underlying crime if such defendant shows that he:

"(a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and

"(b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and

"(c) Had no reasonable ground to believe that any other participant was armed with such a weapon, article or substance; and

"(d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury" (Penal Law § 125.25 [3]).

When determining whether to give a charge on a claimed defense, the trial court must view the evidence in the light most favorable to the defendant, and must instruct the jury on that defense if it is sufficiently supported by the evidence *(People v Butts,* 72 NY2d 746, 751; *People v Moye,* 66 NY2d 887, 889-890). While the burden of proving the affirmative defense is on the defendant, the proof can come from any witness—prosecution or defense *(People v Smith,* 55 NY 888). Furthermore, "inconsistency in claimed defenses or even between a defendant's testimony and a defense 'should not deprive defendant of the requested charge' if the charge would otherwise be warranted by the evidence" *(People v Butts, supra,* at 750). The evidence in this case, viewed in the light most favorable to the defendant, may be reasonably interpreted as sufficiently supporting the affirmative defense to felony murder so as to require the requested charge. It was defendant's position that the plan was to only "defraud" or trick the deceased out of marihuana, and that he did not know whether the guns carried by the other participants were loaded. Moreover, prosecution testimony supported the defendant's claim that Lannaman, as part of the scheme, was to previously arrange a fake police raid on the apartment to eliminate the need to use weapons to carry out the plan. *(Cf., Matter of Anthony M.,* 63 NY2d 270, 282-283; *and see, People v Shaffer,* 66 NY2d 663 [where the People failed to establish that a gun was a "deadly weapon", i.e., operable and loaded

with live ammunition].) Concur—Murphy, P. J., Ross, Ellerin and Smith, JJ.