[684 NYS2d 718]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLAUDE
J. WILSON, Appellant.

Fourth Department, December 31, 1998

**APPEARANCES OF COUNSEL**

*Daniel E. Seaman,* Lockport (*Joseph Townsend* of counsel), for appellant.

*Matthew J. Murphy, III, District Attorney* of Niagara County, Lockport (*Thomas Brandt* of counsel), for respondent.

## OPINION OF THE COURT

DENMAN, P. J.

Defendant's challenge to the jury instructions requires us to decide whether an unloaded shotgun may nonetheless be deemed "loaded" within Penal Law § 10.00 (12), merely because the defendant in possession of the shotgun is simultaneously in possession of shells. If we answer that question in the negative, we must determine whether an unloaded shotgun is a "deadly weapon" within the meaning of Penal Law § 10.00 (12), and whether, under the circumstances presented, it is a "dangerous instrument" within the meaning of Penal Law § 10.00 (13). We answer each of those questions in the negative and thus conclude that defendant's conviction of burglary in the first degree (Penal Law § 140.30 [1]) and attempted robbery in the first degree (Penal Law §§ 110.00, 160.15 [2], [3]) should be set aside.

I.

Defendant was indicted for, among other crimes, two counts of burglary in the first degree (Penal Law § 140.30 [1] [defendant or another participant was armed with a deadly weapon]; [3] [defendant or another participant used or threatened the immediate use of a dangerous instrument]); two counts of attempted robbery in the first degree (Penal Law § 110.00, § 160.15 [2] [deadly weapon], [3] [dangerous instrument]); and criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03). The burglary and attempted robbery counts each alleged that defendant or another participant possessed a Marlin 12-gauge shotgun; one burglary and one attempted robbery count specifically alleged that the shotgun was "loaded".

The indictment arose out of an incident that occurred at an apartment house in Niagara Falls. Two accomplices testified that they entered the building with defendant in an attempt to rob a resident. The accomplices testified that defendant carried a Marlin 12-gauge shotgun in a black plastic bag and carried shells for the gun in his pocket. The intended victim testified that masked men in the hallway of the building tried to force open her apartment door. She did not see a gun.

Responding to the scene, police officers observed defendant and the accomplices at the bottom of the stairs outside the building. Defendant was carrying an object. The suspects huddled and then dispersed, at which time the object was no longer visible. The suspects were quickly taken into custody.

Police seized six 12-gauge shotgun shells and drugs from defendant's pockets.

After arresting defendant, police searched for the object that he had been carrying. Near where the men had huddled, police found a black plastic bag containing an unloaded Marlin 12-gauge shotgun. The shotgun was later tested and found capable of firing the shells seized from defendant's person.

At the close of proof, defendant moved to dismiss one burglary count and one attempted robbery count on the ground that the unloaded shotgun was not a "deadly weapon". Defendant also moved to dismiss the other burglary count and other attempted robbery count on the ground that the unloaded shotgun was not, under the circumstances, a "dangerous instrument". County Court denied the motions, although the People later consented to dismissal of the charge of first degree burglary under Penal Law § 140.30 (3) (dangerous instrument).

In charging the jury on first degree burglary under Penal Law § 140.30 (1) and first degree attempted robbery under Penal Law § 160.15 (2), the court read the definition of "deadly weapon" set forth in Penal Law § 10.00 (12), i.e., "any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged." In addition, the court read the more expansive definition of "loaded firearm" set forth in Penal Law § 265.00 (15), i.e., "any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm." The court invited the jury to use that definition of "loaded firearm" in determining whether defendant possessed a "deadly weapon", i.e., a "loaded weapon", as defined by Penal Law § 10.00 (12). Defendant objected to that instruction.

Defendant was found guilty of first degree burglary under Penal Law § 140.30 (1) and attempted first degree robbery under Penal Law § 160.15 (2) (possession of a "deadly", i.e., "loaded," weapon) and attempted first degree robbery under Penal Law § 160.15 (3) (possession of a "dangerous instrument"). Defendant additionally was found guilty of criminal possession of a controlled substance in the seventh degree. Defendant was sentenced as a second felony offender to concurrent terms of incarceration of 12½ to 25 years for first degree burglary, 7½ to 15 years for attempted first degree robbery, and one year for criminal possession of a controlled substance.

## II.

■ The court erred in charging the jury on the "deadly weapon" element of first degree burglary and attempted first degree robbery (*see,* Penal Law § 140.30 [1]; § 160.15 [2]). The court improperly borrowed the definition of "loaded firearm" from Penal Law § 265.00 (15) and engrafted it onto the Penal Law § 10.00 (12) definition of "deadly weapon". In so doing, the court rewrote the Penal Law, misdefined what constitutes a "loaded weapon" (*see,* Penal Law § 10.00 [12]) and erroneously allowed the jury to find that the weapon was "loaded", i.e., "deadly" (Penal Law § 10.00 [12]), even if not actually "loaded" with live ammunition, so long as defendant simultaneously possessed ammunition for the weapon.

Defendant was not charged with possessing a "loaded firearm" as defined by Penal Law § 265.00 (3) and (15), nor was he charged with violating any provision of Penal Law article 265. The shotgun defendant possessed was not under the specified length, and thus was not a "firearm" within the meaning of that article (*see,* Penal Law § 265.00 [3]). The charges against defendant required proof that defendant or another participant possessed a "deadly weapon", not a "loaded firearm" (*see,* Penal Law § 10.00 [12]; § 140.30 [1]; § 160.15 [2]). "Deadly weapon" is defined by Penal Law § 10.00 (12) for the purpose of delineating various crimes and affirmative defenses set forth throughout the Penal Law (*see, e.g.,* Penal Law § 120.00 [3]; § 120.05 [2], [4]; § 120.10 [1]; §§ 120.11, 120.14 [1]; § 125.25 [3] [b]; § 140.17 [1]; § 140.25 [1] [a]; § 215.51 [b] [i]; § 265.01 [5]; § 265.08 [1]; § 265.09 [1] [a]). In contrast, the definition of "loaded firearm" in Penal Law § 265.00 (15) has a much more limited function, pertaining only to crimes contained in Penal Law article 265 (*see,* Penal Law § 265.02 [4]; §§ 265.03, 265.35 [2]; *see also,* Penal Law § 140.17 [2], which, although not expressly incorporating Penal Law § 265.00 [15], conveys a similarly enlarged definition of when a firearm is "loaded" for the limited purpose of determining criminal liability under that subdivision). The structure of the Penal Law thus confirms that the concepts of "deadly weapon" and "loaded firearm" do not overlap and were intended to serve discrete functions (*see, People v Tucker,* 55 NY2d 1, 8, *rearg denied* 55 NY2d 1039, in which the Court charted the distinction between those elements).

The court's charge improperly enlarged the definition of "deadly weapon". Under Penal Law § 10.00 (12), "deadly weapon" includes a gun, provided that it is a "loaded weapon

from which a shot, readily capable of producing death or other serious physical injury, may be discharged". Courts that have addressed that section have implied that, in order to be a "deadly weapon", a gun must actually be "loaded", as that term is commonly understood (*see, People v Shaffer*, 66 NY2d 663, 664, *modfg* 105 AD2d 863; *People v Hilton*, 187 AD2d 608, 609, *lv denied* 81 NY2d 887; *People v Lind*, 173 AD2d 179, 183-184, *affd in part and revd in part on other grounds* 79 NY2d 722, *cert denied* 506 US 1011; *People v Johnson*, 169 AD2d 498, 500, *lv denied* 77 NY2d 962; *People v Robertson*, 162 AD2d 953, 954, *lv denied* 76 NY2d 863; *People v Kilpatrick*, 143 AD2d 1, *criticized on other grounds in People v Gray*, 86 NY2d 10, 19-20; *People v Shaffer*, 130 AD2d 949, 950, *lv denied* 70 NY2d 717; *People v Amato*, 99 AD2d 495, 496; *People v Elfe*, 37 AD2d 208, 211; *People v Howard*, 37 AD2d 178, 179; *People v Madehere*, 149 Misc 2d 564, 567; *People v Tracey A.*, 97 Misc 2d 1053, 1055-1056; *but see, People v Lay*, 39 AD2d 904, 905).

No other construction is possible given the statutory requirements. Only if a gun is actually "loaded" is it one "from which a shot * * * may be discharged" (Penal Law § 10.00 [12]). We disagree with the People's argument that the Legislature meant "may be discharged" in the hypothetical sense, rather than in the sense of the gun's immediate capability. Self-evidently, the concept of "loaded" in Penal Law § 10.00 (12) is narrower than the concept of "loaded" in Penal Law § 265.00 (15).

*People v Shaffer* (66 NY2d 663, *modfg* 105 AD2d 863, *supra*) is instructive on the meaning of "loaded". There defendant, a fleeing burglar, was apprehended wearing an empty holster; along the escape route police found a revolver containing four bullets and one spent casing. In a statement, defendant admitted that he pulled the trigger four times in an attempt to shoot a pursuing officer, and that the gun misfired each time. Defendant contended that the evidence was insufficient to establish that he possessed a "deadly weapon". The Third Department rejected defendant's contention, but the Court of Appeals concluded: "The People failed to establish that the gun found at the scene was a 'deadly weapon' (Penal Law § 10.00 [12])—that is, both operable and *loaded with live ammunition*—a *necessary element* [of] * * * the crimes of which defendant was convicted" (*People v Shaffer, supra*, 66 NY2d, at 664 [emphasis supplied]). In modifying defendant's conviction, the Court implicitly agreed with the premise of both the majority and concurrence-dissent at the Appellate Division that the People

were required to prove that the gun *"contained* live ammunition" (*People v Shaffer, supra,* 105 AD2d, at 864, 866 [emphasis supplied]).

A prior decision of this Court is likewise instructive. In *People v Shaffer* (*supra,* 130 AD2d, at 950) we held that a "gun is loaded * * * despite the absence of a shell from the chamber if there is ammunition in the clip or magazine * * * and by manual manipulation a shot can be discharged". We further noted, "When the gun was seized, there was ammunition in a barrel and in the magazine, and test firings revealed that the gun was operable by manual manipulation" (*People v Shaffer, supra,* 130 AD2d, at 950). Although the "manual manipulation" test goes primarily to whether the weapon is "operable", not whether it is "loaded", we note that a shot can be discharged by "manual manipulation" of a gun only if the gun is actually "loaded" with live ammunition. *Shaffer* cites *People v Elfe* (*supra*) and *People v Howard* (*supra*), both of which held a revolver to be a "deadly weapon" where it contained live ammunition in the cylinder.

The thrust of the foregoing cases is that the gun must actually be "loaded" in order to constitute a "deadly weapon" (*see, People v Shaffer, supra,* 66 NY2d, at 664; *People v Amato, supra,* 99 AD2d, at 496). The practice commentary reaches the same conclusion (*see,* Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 10.00, at 23 ["(I)t is crucial under this definition that there be proof that the firearm was loaded with operable ammunition"]). Apart from the aforementioned case of *People v Lay* (*supra*), which we regard as an anomaly, no case reaches a contrary result, either by citing Penal Law § 265.00 (15) or by otherwise relying on a more expansive definition of "loaded". There is thus little support for the People's contention that an unloaded gun may be considered a "loaded" "deadly weapon" merely because the person possessing it also possesses ammunition (*see, People v Tracey A., supra,* 97 Misc 2d, at 1055-1056).

Penal statutes "must be construed according to the fair import of their terms to promote justice and effect the objects of the law" (Penal Law § 5.00). While a penal statute need not be strictly construed (*see,* Penal Law § 5.00), there is no authority for expanding a penal statute by freely importing concepts from unrelated statutes. The court thus erred in engrafting the definition of "loaded firearm" (Penal Law § 265.00 [15]) onto the definition of "deadly weapon" (Penal Law § 10.00 [12]). Because of the erroneous instruction, the conviction of first

degree burglary under Penal Law § 140.30 (1) and first degree attempted robbery under Penal Law § 160.15 (2) should be set aside. Nevertheless, because the error relates only to the aggravating element, and further because the evidence is insufficient only with respect to that element (see, point III, infra), a reduction of the conviction rather than a reversal and a new trial is the appropriate remedy.

## III.

The evidence is legally insufficient to support the conviction of first degree burglary under Penal Law § 140.30 (1) and attempted first degree robbery under Penal Law § 160.15 (2). The People were required to prove that defendant or another participant possessed a "deadly weapon", meaning a "loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged" (Penal Law § 10.00 [12]). In referring to a "loaded weapon", the statute requires proof that the weapon actually be "loaded", i.e., that it actually contain live ammunition (see, People v Shaffer, supra, 66 NY2d, at 664, modfg 105 AD2d 863, 864; People v Shaffer, 130 AD2d 949, 950, supra; People v Elfe, supra, 37 AD2d, at 211; People v Howard, supra, 37 AD2d, at 179; People v Tracey A., supra, 97 Misc 2d, at 1055-1056). Absent proof that the shotgun contained ammunition, it was not a "loaded," i.e., "deadly", weapon (Penal Law § 10.00 [12]). Because the proof is insufficient to establish the aggravating element, the judgment should be modified by reducing the conviction of first degree burglary to second degree burglary under Penal Law § 140.25 (2) (see, CPL 470.15 [2] [a]; People v Shaffer, supra, 66 NY2d, at 664). Similarly, the conviction of attempted first degree robbery under Penal Law § 160.15 (2) should be reduced to attempted third degree robbery under Penal Law § 160.05 (see, People v Kilpatrick, supra, 143 AD2d, at 1; People v Amato, supra, 99 AD2d, at 496; People v Early, 59 AD2d 912).

## IV.

The evidence also is legally insufficient to support the conviction of attempted first degree robbery under Penal Law § 160.15 (3). At trial, defendant moved to dismiss that count for lack of proof of possession of a "dangerous instrument", because the shotgun was not loaded. Although defendant's brief does not challenge the conviction on that basis, we nonetheless address the issue as a matter of discretion in the interest of justice (see, CPL 470.15 [3] [c]; [6] [a]).

Four Judges of the Court of Appeals have labeled it an "open question in [that Court] * * * whether a gun would have to be loaded and operable to be considered a dangerous instrument" under Penal Law § 10.00 (13) (*People v Lopez*, 73 NY2d 214, 221, n 1). Whether an object is a "dangerous instrument" depends on the circumstances under which it is used, attempted to be used or threatened to be used (*see,* Penal Law § 10.00 [13]; *People v Carter*, 53 NY2d 113, 116; *People v Castaldo*, 72 AD2d 568). The cases generally hold that, under ordinary circumstances, lack of proof that a gun was loaded will render the evidence insufficient to establish that it is a "dangerous instrument" (*see, Matter of Angel Q.*, 194 AD2d 793; *People v Hilton*, 145 AD2d 352, 353-354; *People v Colavito*, 126 AD2d 554, *affd* 70 NY2d 996; *People v Seabrooks*, 120 AD2d 691; *People v Stephens*, 97 AD2d 523; *People v Bonefont*, 84 AD2d 844; *People v Castaldo, supra*; *People v Holmes*, 71 AD2d 904, *affd* 52 NY2d 976; *People v Johnson*, 64 AD2d 907, 911, *affd for reasons stated* 48 NY2d 674; *People v Briggs*, 52 AD2d 1053; *People v Fwilo*, 47 AD2d 727, 727-728; *People v Iglesias*, 40 AD2d 778, 778-779; *but see, People v Lay, supra*, 39 AD2d, at 905 [dictum]). The result might be different if defendant used, attempted to use, or threatened to use the gun as a club (*see, People v Colavito, supra*, 126 AD2d, at 555; *People v Castaldo, supra*; *People v Madehere, supra*, 149 Misc 2d, at 566; *cf., People v Hilton, supra*, 187 AD2d, at 609). There is no such proof on this record, however. Under the circumstances of use or attempted use presented by this case, the unloaded gun is not an "instrument * * * readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [13]; *see, People v Hilton, supra*, 145 AD2d, at 354; *People v Castaldo, supra*). Because the proof is insufficient to establish the aggravating element, the judgment should be further modified by reducing the conviction of attempted first degree robbery under Penal Law § 160.15 (3) to attempted third degree robbery under Penal Law § 160.05 (*see,* CPL 470.15 [2] [a]; *People v Early, supra*).

## V.

Defendant's remaining contentions lack merit. By failing to argue that corroborative evidence was lacking and by failing to move to dismiss on that ground, defendant has failed to preserve his contention for our review (*see, People v Gray*, 86 NY2d 10, 18-22, *supra*; *People v Cona*, 49 NY2d 26, 33). In any event, the corroborative evidence need only "tend[ ] to connect"

defendant with the commission of the offense (CPL 60.22 [1]) and need not establish all the elements thereof (*see, People v Breland*, 83 NY2d 286, 293; *People v Steinberg*, 79 NY2d 673, 683). The People were thus not required to present nonaccomplice proof corroborating that defendant personally entered the building and personally possessed the shotgun. It was enough that the testimony of the arresting officer established the presence of defendant and his accomplices at the scene of the crime.

In view of our determination, we need not address defendant's challenge to the sentence.

Accordingly, the judgment should be modified by reducing the conviction of first degree burglary to second degree burglary, reducing the conviction of both counts of first degree attempted robbery to third degree attempted robbery, and vacating the sentences imposed thereon, and the matter should be remitted to Niagara County Court to sentence defendant accordingly.

HAYES, BALIO, BOEHM and FALLON, JJ., concur.

Judgment unanimously modified, on the law, and as a matter of discretion in the interest of justice, and as modified, affirmed, and matter remitted to Niagara County Court for sentencing in accordance with the opinion by DENMAN, P. J.