■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ELIZABETH LOGAN, Appellant.—Judgment, Supreme Court, Bronx County (Uviller, J.), rendered December 6, 1983, which convicted defendant, upon a jury verdict, of murder in the second degree, and sentenced her to a term of imprisonment of 15 years to life, unanimously reversed, on the law and on the facts, and the matter remanded for a new trial.

The defendant was the girlfriend of the decedent and, from time to time, stayed with him at his home. After a family barbecue, hosted by decedent and attended by defendant, they left the decedent's home to attend another barbecue nearby. Some time later the defendant reentered the decedent's house, saying that she had come back to get something. About 10 minutes later, defendant again left the house. Shortly thereafter, shots were heard and the defendant was seen with her hand pointed down and sparks or fire coming from her hand. The decedent was found, lying face down on the ground, bleeding. He was taken to Jacobi Hospital where he was pronounced dead.

The attorney for the defendant asked the trial court to submit a count of manslaughter in the first degree (intent to cause serious physical injury) to the jury as a lesser included offense of murder in the second degree. The court reserved decision until the next day when it stated that it would not submit the requested lesser included offense to the jury. The court observed that the decedent had been shot in the chest and in the buttocks and went on to draw "the inescapable inference that after being shot in the chest he fell onto his face and that he layed [sic] there at least two and possibly three more shots were fired into this mortally wounded man". It was further stated that the court was not "relying in any manner upon the sort of irrebutable presumption that was rejected in Sandstrom." The court concluded: "I have heard

nothing at all adduced from which a jury could reasonably conclude that whoever it was who shot [the decedent] intended only to injure but not to kill."

In *People v Butler* (57 NY2d 664 [1982]), a case in which the decedent had been shot in the back and in the head, the Court of Appeals, in reinstating a manslaughter conviction, relied upon the reasoning of Justice Sandler's dissent (86 AD2d 811, 814-815) which stated: "A fundamental error underlying the court's decision is the inference from the fact that a bullet entered the head of the deceased that the shooter must have intended to kill him. Indisputably the nature of the bullet wounds and, particularly the head wound, provided the prosecutor with a strong argument that the shooter intended to kill the deceased. But with the possible exception of a contact wound, not present in this case, it is a matter of common experience that people who fire handguns do not always hit precisely the intended target. The issue is classically a factual one for the jury. In a curious way it becomes apparent upon analysis that the decision of the court necessarily rests upon a finding of an irrebutable presumption that the defendant intended the natural and probable consequences of his acts, a concept which I had thought had been put to rest by the decision of the United States Supreme Court in *Sandstrom v Montana* (442 US 510). Many years ago in a murder case in which intent to kill was established far more convincingly than here, Chief Judge Cardozo wrote the definitive comment on the essential issue presented. In *People v Moran* (246 NY 100, 103), he wrote: 'Whenever intent becomes material, its quality or persistence—the deranging influence of fear or sudden impulse or feebleness of mind or will—is matter for the jury if such emotions or disabilities can conceivably have affected the thought or purpose of the actor.' "

The circumstances here are not different. The medical examiner testified that she could not determine which of the shots had been fired first or whether any of them had been fired after the decedent was on the ground. There was no testimony concerning the relative positions of the defendant and the decedent before or during the shooting. There was no testimony that the defendant took deliberate aim before firing. There was no testimony as to the decedent's body movements upon being shot. In short, there was no evidence which indicated in which order the wounds to the decedent had been inflicted. The conclusions to be drawn from the lack of such evidence, particularly insofar as they relate to the presence or

absence of intent to kill, should have been for the jury. Concur —Sandler, J. P., Carro, Asch, Kassal and Rosenberger, JJ.