■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS ALAMO, Also Known as LOUIS ALAMO, Appellant.—Judgment of the Supreme Court, Bronx County (Fred W. Eggert, J.), rendered October 30, 1985, convicting defendant of murder in the second degree upon a jury verdict and sentencing him to a term of imprisonment of 20 years to life, is unanimously reversed, on the law and on the facts, and the matter remanded for a new trial.

On October 14, 1984, Andres Martinez was shot seven times. Defendant was arrested on November 1, 1984 at the apartment of a girlfriend, Blanca Helfgott. Found in the apartment was a .38 caliber automatic pistol which, a ballistics expert testified, was the gun used in the killing of Martinez. There was also testimony from a witness, who saw defendant running from the scene of the crime with a gun, that defendant threatened persons who had gotten in his way, asking: "Who else wants a shot in the head?" Blanca Helfgott testified that defendant told her on the night of the killing that he had killed a man. He explained that five men, some armed with shotguns and revolvers, had attempted to rob him and that he had to defend himself. Helfgott testified that defendant later told her after his arrest that he had been paid $5,000 to kill Martinez.

Defendant testified that he was a cocaine seller and had been told on October 13th that several men were planning to rob him. Later that night, after midnight, he was stopped by several men who were armed, one with a shotgun and another with a revolver. When the men spread out, defendant, fearful of being surrounded, aimed toward them, fired five or six shots, and ran. Defendant said he was not an expert with the pistol and was surprised at how fast it discharged. He denied, *inter alia,* killing Martinez for money or shooting him as he lay on the ground. One Maria Ramos confirmed defendant's account of the robbery.

Lillian Salicrup testified that she was the mother of defendant's child and that Helfgott had said, three months after the shooting, after ascertaining that defendant was the father of Salicrup's child, that she knew "one way to destroy him and make you suffer".

The attorney for defendant asked the trial court to submit to the jury a count of manslaughter in the first degree (intent to cause serious physical injury) as a lesser included offense of the crime of murder in the second degree. The court refused to give the charge on the lesser offense observing that, by defendant's own testimony, he was running away and firing at the alleged robbers at the same time and that there was no evidence that these individuals were chasing or firing at him. The court also noted the fact that Martinez had been shot seven times in various parts of the body.

A lesser included offense must be submitted to the jury when the defendant shows (1) that it is impossible to commit the greater crime without, concomitantly, by the same conduct, committing the lesser offense; and (2) that there is a reasonable view of the evidence in the particular case which would support a finding that the defendant committed the lesser offense, but not the greater *(People v Glover,* 57 NY2d 61, 63). "The test of whether a 'lesser included offense' is to be submitted is certainly not that it is probable that the crime was actually committed or even that there is substantial evidence to support such a view. It suffices that it is supportable on a rational basis or, put another way, by logical necessity. To warrant a refusal to submit it 'every possible hypothesis' but guilt of the higher crime must be excluded *(People v Shuman,* 37 NY2d 302, 304, *supra; People v Malave,* 21 NY2d 26), the evidence for that purpose being required to be considered in the light most favorable to the defendant *(People v Battle,* 22 NY2d 323) since the jury is free to accept or reject part or all of the defense or prosecution's evidence *(People v*

*Asan,* 22 NY2d 526; *People v Valle,* 15 NY2d 682, revg on dissent at App Div 21 AD2d 765)." *(People v Henderson,* 41 NY2d 233, 236.)

Submission of the count of manslaughter in the first degree was appropriate even though justification was an issue herein. The jury could have reasonably believed defendant's claim that he was not the aggressor initially, but only attempted to forestall a robbery. At the same time, the jury could also have believed that defendant used excessive force in self-defense. Under the circumstances herein, there was a reasonable view of the evidence that defendant's intent in shooting this automatic pistol was not to kill, but only to injure. This is true even though the victim was shot seven times. As noted, there was evidence that the weapon used was an automatic and that defendant was not an expert with it and was surprised at how fast it discharged. Although the Trial Judge, in denying defense counsel's request to charge the lesser offense, stressed the number of shots fired and the position of the wounds, the number of shots is not conclusive. "Indisputably the nature of the bullet wounds and, particularly the head wound, provided the prosecutor with a strong argument that the shooter intended to kill the deceased. But with the possible exception of a contact wound, not present in this case, it is a matter of common experience that people who fire handguns do not always hit precisely the intended target. The issue is classically a factual one for the jury." *(People v Butler,* 86 AD2d 811, 814-815 [dissenting mem by Sandler, J.], *revd on dissenting mem* 57 NY2d 664.)

In *People v Logan* (120 AD2d 359), after shots were heard and defendant was seen with her hand pointed down and sparks or fire coming from her hand, the victim, her boyfriend, was found lying face down on the ground. The trial court refused to charge the lesser offense of manslaughter in the first degree and this court reversed, noting that the medical examiner could not determine which of the shots was fired first, whether any of the shots were fired after the victim was on the ground, and that there was no testimony that defendant took deliberate aim before firing. Here, similarly, the medical examiner could not determine the order in which the shots were fired nor state that defendant shot Martinez as he lay on the pavement. Nor was there compelling evidence that defendant deliberately aimed at the victim's vital organs. Concur—Sandler, J. P., Carro, Asch, Rosenberger and Ellerin, JJ.