■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTONIO NIEVES, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Calabretta, J.), rendered February 7, 1984, convicting him of murder in the second degree, criminal possession of a weapon in the second degree (two counts) and reckless endangerment in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, the indictment is dismissed, and the case is remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

The charges against the defendant and a codefendant arose from an incident which occurred on October 20, 1981, initially involving a high-speed chase by Port Authority police officers in the area of Kennedy Airport along the Van Wyck Expressway. The subject automobile was apparently driven by the codefendant traveling about 90 to 100 miles an hour. It struck the metal central divider as well as a passing van and ended up in an area along the side of the roadway. The codefendant, observed fleeing the vehicle, was immediately apprehended and arrested. The police found two individuals in the vehicle's rear seat, the defendant, who was found with a bullet wound to his right hand, and Juan Pion Baez, who had been shot eight times, including two times in the head. After being removed from the vehicle, Baez told one of the officers in Spanish and English that, "I shot, he shoot me, white guy, el

blanco. I'm dying, blood, sangre". Although the defendant, the codefendant and Baez were all Hispanic, the codefendant was the only white person of the three connected with the vehicle. Shortly thereafter, on arrival at the hospital, Baez was declared dead.

At a joint trial by jury, the People proceeded against the defendant on a theory based upon accessorial liability contending that the codefendant was the actual shooter. Neither the defendant nor the codefendant testified.

According to police testimony, a search of the vehicle at the scene revealed two revolvers wrapped in plastic, one on the floor in the back seat of the car, a paper bag containing a hypodermic needle, a piece of tinfoil, a bottle cap and two bullet shells found behind the driver's seat. As a result of a conversation that one of the officers had with the defendant, the police conducted an immediate search of the area for other individuals who might have been involved in the murder. Although the police testified that they observed two individuals in the back seat of the vehicle and one in the driver's seat during the chase, the defense presented the testimony of two occupants of the van that had been struck by the speeding vehicle who stated that they had seen only two people in the front seat of the vehicle and no one in the back seat. No specific motive for the homicide was established and the People presented no evidence indicating that the defendant had any prior contact or familiarity with either the codefendant or the victim. The case against the defendant was therefore based upon circumstantial evidence.

It is well settled that in order to establish the liability of an accomplice for a crime committed by a principal actor, the People must demonstrate beyond a reasonable doubt that the accessory possessed the mental culpability necessary to commit the crime charged and in furtherance thereof, solicited, requested, commanded, importuned or intentionally aided the principal (Penal Law § 20.00; *People v La Belle,* 18 NY2d 405; *People v Hayes,* 117 AD2d 621, *lv denied* 68 NY2d 668).

With respect to the homicide, although the People were not required to prove that the defendant actually fired the fatal shot, they were required to present adequate evidence of a plan or intent to commit murder shared by each person charged and this "must be shown to exclude other fair inferences" *(People v Monaco,* 14 NY2d 43, 45; *People v Brathwaite,* 63 NY2d 839). "Without adequate proof of a shared intent with the principal actor, there is no community of purpose

and therefore no basis for finding defendant acted in concert with the actual 'shooter' " *(People v McLean,* 107 AD2d 167, 169, *affd* 65 NY2d 758).

The People presented a logical interpretation of the circumstances in which the police found the defendant, suggesting that the defendant aided the codefendant by holding down the victim during the shooting and receiving his wounds to his hand when bullets exited the victim's body. However, this is insufficient to exclude to a moral certainty every reasonable hypothesis of innocence particularly in view of the victim's own statement which implicated only the codefendant *(see, e.g., People v Benzinger,* 36 NY2d 29; *People v Cleague,* 22 NY2d 363, 365-366). Even viewing the evidence in a light most favorable to the People, the evidence established, at best, the defendant's presence in the vehicle, but failed to demonstrate that he assumed any purposeful role in the murder, knew beforehand or intended to cause the victim's death.

Similar defects are presented concerning the People's evidence on the weapons possession and reckless endangerment charges likewise pursued on a theory of accessorial conduct. Despite the applicability of the statutory presumption of possession of the weapon under Penal Law § 265.15 (3) arising from the presence of the weapons in the automobile, the People failed to prove that the defendant knowingly possessed the loaded revolvers or in any way handled the weapons or exercised control over them at any time during the incident. Moreover, with respect to the reckless endangerment conviction, the undisputed evidence revealed that the codefendant was the driver of the vehicle. The mere fact that the defendant was a passenger in its back seat under all of these circumstances is insufficient evidence to sustain the conviction.

In view of this disposition, we need not address the remaining contentions presented by the defendant *pro se* and by his appellate counsel. Thompson, J. P., Lawrence, Rubin and Spatt, JJ., concur.