THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARY MONGEN, Appellant.

First Department, May 3, 1990

## APPEARANCES OF COUNSEL

*Diane Pazar* of counsel *(Philip L. Weinstein,* attorney), for appellant.

*Alexei Schacht* of counsel *(Ellen Polshek* on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

SULLIVAN, J. P.

On November 2, 1987, at about 11:00 A.M., as Effie Graham, a housekeeper at New York Hospital working on the 7th floor of the M building (M-7), an area not open to the general public, was leaving the utility room heading towards the medication room, she heard a "loud sound" like the "crushing of a paper bag". As she turned the corner, a man, later identified as Raymond Wolfe, whom she had never seen before, came out of the medication room, which had a sign on the door that read, "Staff Only, Medication Room". He was "ruffling" a big brown paper bag, "rolling it down", and ran past her, "almost knock[ing] her down". He was about 5 feet 7 inches or 5 feet 8 inches tall, weighed about 140 to 150 pounds, had straight hair "slicked back" with a "duck tail", and was wearing a white, doctor's laboratory coat, as well as gray acid-washed jeans and "very dirty" sneakers, which, as Graham knew, violated the hospital's dress code for staff members. After shouting to a clerk on the floor to "call security," Graham ran after Wolfe, who dashed to the stairway exit, running down the stairs at such "a fast rate" that the landing was vibrating.

Meanwhile, at about the same time, Eric Mazzella, a hospital security officer, who had been standing in front of the security office, received a radio report of a "suspicious male up

on M-7", as well as a description of the person Graham had seen. Mazzella immediately proceeded to the entrance to the M building, where he saw two men on their way out of the building together. One of them, defendant, was holding a light blue knapsack. Wolfe, about 5 feet 7 inches and 150 pounds, had straight black hair combed back and wore gray jeans.

As Mazzella, who was in uniform, approached the two men, they "started to split up". Mazzella stopped them and asked the "nature of their business". Defendant said he was "on the second floor going to the bathroom". Since neither defendant nor Wolfe was able to produce hospital identification, and defendant had no permission or authority to be on the second floor of the M building, which contains the dialysis unit and is not open to the public, Mazzella decided to detain them. After recovering a white, doctor's laboratory coat, one large box of syringes, and two smaller boxes of needles from defendant's knapsack, Mazzella asked defendant where he "got" the property; defendant answered, "on the second floor".

At trial, Ms. Graham identified the laboratory coat taken from defendant's knapsack as belong to New York Hospital. She also recognized the boxes of needles and syringes found in the knapsack as belonging to the seventh-floor medication room because the boxes were marked "M-7" and the instruments were "the type" stored there. Defendant did not present any evidence in his defense.

On appeal, defendant argues, and the dissent agrees, that the trial court erred in declining to charge trespass as a lesser included offense of burglary. Specifically, defendant claims that there was a reasonable view of the evidence on which the jury could find that although he and Wolfe "exited the hospital at the same time they were not together", that he "knowingly and unlawfully entered a restricted area of the hospital for a noncriminal purpose, using the bathroom, and that he lacked the criminal intent to commit a crime." Citing the absence of any evidence that he and Wolfe "arrived together, were ever seen together in the hospital at any time, or ever spoke to one another", defendant argues that the "possibility" therefore existed that he "found a discarded knapsack on the stairway or in the second floor bathroom". Careful scrutiny of the record, however, fails to reveal a shred of evidence to support such an unrealistic theory of the case.

At the outset, we emphasize that the court is not required to "charge down in every case in which any distillate of the

total proof, however artificial or irrational, would support a conviction of the lesser but not the greater crime"; the test is not whether there is "any view" of the evidence, but whether there is a reasonable view of the evidence. *(People v Scarborough,* 49 NY2d 364, 373.) In that regard, the record does not even remotely suggest that defendant and Wolfe were not together leaving the hospital, and it would be " ' "sheer speculation" ' " for the jury so to conclude. *(See, supra,* at 373.)* In fact, the record reveals that, in response to the approach of the uniformed security officer, Mazzella, defendant and Wolfe "split up". This is compelling evidence of defendant and Wolfe's own consciousness of guilt and the jury could so find. Such conduct is, of course, entirely inconsistent with defendant's alleged innocent possession of the hypodermic needles and syringes and the laboratory coat. Indeed, the jury could reasonably conclude that since it was Wolfe who had been spotted earlier, he gave the laboratory coat and the proceeds of the crime to his accomplice, defendant, so that if Wolfe were apprehended he would not be in possession of any incriminating evidence.

To accept defendant's suggested view of the case, the jury would have to speculate that Wolfe, knowing that he had been observed by the housekeeper, instead of simply dropping the paper bag on the stairs, would have taken the time to remove his laboratory coat and put it in a knapsack that was hidden on his body or somewhere else, place the boxes of hypodermic instruments in the same knapsack, and then, inexplicably, leave the knapsack behind in open view. Of course, the jury would then have to speculate further that, somehow, defendant picked up the knapsack and fortuitously walked out of the hospital at the exact moment as Wolfe. Such a far-fetched view of the evidence makes no sense.

 Moreover, there is no evidentiary basis for defendant's hypothesis that he found the knapsack and its contents. His statement was that he "got" the property on the second floor. On this point, Mazzella was quite specific, rejecting any suggestion that defendant told him that he found the knapsack on the second floor. Nor is there any evidence that defendant did not know what was in the knapsack, or that the knapsack did not belong to him, or that he did not know Wolfe. Thus, the only reasonable view of the evidence is that defendant and Wolfe were acting in concert in a scheme to steal hypodermic instruments from the hospital, that Wolfe raced down the stairs to meet his accomplice, removed his disguise and trans-

ferred it and the stolen goods to defendant's knapsack, leaving Wolfe unencumbered by any incriminating evidence in the event he were identified. Their only mistake, as the prosecutor rightly pointed out in summation, was that they came out of the building together.

Nor did defendant "impugn by cross-examination the evidence offered by the People to establish circumstantially the element of his intent to commit a crime" in the hospital. *(People v Woolard,* 124 AD2d 763, 764, *lv denied* 69 NY2d 751.) Thus, this record provides no evidentiary basis for a finding that defendant merely trespassed in the dialysis unit for the purpose of using the bathroom, found a knapsack containing stolen hospital supplies and a laboratory coat, and just happened to leave the hospital with the knapsack in the company of the man who had worn a laboratory coat and taken hypodermic instruments in a paper bag from the seventh-floor medication room.

The dissent argues that defendant's statement to the security officer is synonymous with his contention that he entered the hospital for an innocent purpose. While defendant's statement may be *consistent* with his contention that he entered the hospital for an innocent purpose, i.e., to use the bathroom, it is not, however, synonymous with such a contention. *(People v Woolard, supra.)* Furthermore, contrary to the dissent's argument, defendant never said that he "went to the second floor * * * to use the bathroom". According to the security officer, defendant stated that "he was on the second floor going to the bathroom" and that he "got" the property there. Nor does our determination rest, as the dissent suggests, on an assessment of "the credibility of both parties' contentions". It rests, rather, on the conclusion, reached after viewing the evidence in the light most favorable to the defendant, that under no reasonable view thereof was defendant guilty of only the lesser included offense. *(See, People v Woolard, supra,* at 764.)

Defendant contends that the trial court "severely prejudiced" him by failing to charge the lesser included offense because the court denied counsel the opportunity to concede on summation that defendant trespassed and to argue that although he entered a restricted area illegally he did so for "an innocent purpose and not intending to commit any crime". Thus, defendant argues, the court put him in "the difficult position" of arguing that the jury should acquit him even though he possessed the stolen property because the

"appropriate charges were not before the jury". Aside from its patent lack of merit, this argument is irrelevant. Irrespective of whether the court submitted the lesser included offense, defendant was free to argue that the People failed to prove all the elements of the crime of burglary and that even if the jury believed that defendant trespassed he lacked the intent to commit a crime in the hospital. In fact, that is precisely what defense counsel did.

The dissent's and defendant's reliance on *People v Csikortas* (106 AD2d 578) is misplaced. Here, unlike *Csikortas,* defendant was apprehended in possession of the property stolen from the premises he had entered, and neither he nor Wolfe testified and offered a detailed explanation as to why defendant was on the premises carrying the proceeds of the burglary. Similarly, *People v Henderson* (41 NY2d 233), an attempted burglary case, also relied upon by both defendant and the dissent, is of no help. There, the defendant was not arrested with any stolen property, and, in contrast to the instant case, testified in his own behalf and gave a plausible explanation for his presence in the area, denying that he was the person who had attempted to enter the premises. In rejecting defendant's argument that he was entitled to a charge-down, we are in no way suggesting that defendant should have testified. There is, of course, no such requirement. Our determination is based on the record as we find it.

Nor does *People v Gaines* (74 NY2d 358), cited by the dissent, in which the Court of Appeals held that the intent to commit a crime must be contemporaneous with the illegal entry, advance defendant's position. Neither defendant nor the dissent asserts that defendant formed an intent to commit a crime after he entered the restricted area of the building; their position is rather that the element of intent was totally lacking. The People certainly never advanced such a theory.

Since defendant's argument that the jurors could reasonably find that he committed only a trespass rests on nothing more than baseless conjecture, contradicted by the evidence, the trial court properly refused to submit the lesser included offense.

Accordingly, the judgment of the Supreme Court, New York County (Howard Bell, J.), rendered July 25, 1988, convicting defendant of burglary in the third degree and sentencing him, as a predicate felony offender, to an indeterminate term of imprisonment of from 2½ to 5 years' imprisonment, should be affirmed.

ROSENBERGER, J. (dissenting). I would reverse and remit this matter for a new trial based on the trial court's refusal to charge trespass as a lesser included offense of burglary in the third degree, as requested by defense counsel.

The record reveals that a housekeeper at New York Hospital saw Raymond Wolfe, who the prosecution alleged was an accomplice of defendant, leaving a medication room on the seventh floor of the hospital with a paper bag. Although Wolfe was wearing a white lab coat, he also had on dungarees and sneakers in violation of the dress code established for hospital employees. When Wolfe ran down the stairs, the housekeeper notified hospital security officers and provided them with Wolfe's description. A security officer saw Wolfe as he was walking out of the hospital with defendant and testified that when they saw him, Wolfe and defendant began to "split up". Inside a knapsack recovered from defendant was the lab coat worn by Wolfe and three boxes of hypodermic syringes and needles. In response to the officer's questioning, defendant stated that he had gone to the second floor of the hospital to use the bathroom and "got" the knapsack there. The officer testified that the second floor was restricted to patients receiving dialysis.

Defendant was subsequently indicted for the crime of burglary in the third degree. At the precharge conference, the court asked the prosecutor and defense counsel if they would have any objection to its providing the jury with a charge on trespass, since a reasonable view of the evidence supported a finding that defendant committed the lesser included offense. Defense counsel agreed with the court that a reasonable view of the evidence supported the submission of a charge on trespass and requested that the jury be so instructed. The prosecutor objected, claiming that the evidence adduced at trial proved that defendant intended to commit a crime while inside the building. Defense counsel then added that if the court charged the jury on the law of trespass, she would consider conceding unlawful entry in her summation. The court ruled that since the parties could not agree on whether the lesser included offense of trespass should be submitted for the jury's consideration, it would only charge the crime contained in the indictment, burglary in the third degree.

In order to establish his entitlement to a lesser included offense charge, a defendant must demonstrate that the charge requested is a "lesser included offense" and that there is a reasonable view of the evidence to support a finding that he

committed the lesser offense but not the greater *(People v Glover,* 57 NY2d 61). Pursuant to CPL 300.50 (1) and (2), the court must submit the lesser charge if both prongs are satisfied.

The Penal Law defines burglary in the third degree as knowingly entering or remaining unlawfully in a building with intent to commit a crime therein (Penal Law § 140.20). A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises (Penal Law 140.05). Trespass is a lesser included offense of burglary in the third degree because "it is theoretically impossible to commit burglary without concomitantly and by the same conduct committing trespass" *(People v Grant,* 132 AD2d 929, 930, *lv denied* 70 NY2d 750).

In determining whether there is a reasonable view of the evidence, the court must consider the evidence in the light most favorable to defendant *(People v Steele,* 26 NY2d 526), keeping in mind that the jury is free to accept or reject part or all of the defense or prosecution evidence *(People v Henderson,* 41 NY2d 233). "The test of whether a 'lesser included offense' is to be submitted is certainly not that it is probable that the crime was actually committed or even that there is substantial evidence to support such a view. It suffices that it is supportable on a rational basis or, put another way, by logical necessity. To warrant a refusal to submit it 'every possible hypothesis' but guilt of the higher crime must be excluded *(People v Shuman,* 37 NY2d 302, 304 * * *; *People v Malave,* 21 NY2d 26)" *(supra,* at 236; *see also, People v Alamo,* 128 AD2d 441).

Contrary to the conclusion reached by my colleagues, I believe that there was a reasonable view of the evidence, based on defendant's statements to the security officer, from which the jury could have concluded that while defendant illegally entered the building, or a portion of the building, he lacked the intent to commit a crime therein. Accordingly, it was error for the trial court to refuse to charge trespass as a lesser included offense.

The People and the majority contend that defendant and Wolfe began to "split up" when they saw the security officer approaching and that such reaction was "compelling evidence" of defendant's consciousness of guilt. Of course, the weakness of consciousness of guilt evidence has been consistently acknowledged by our courts *(see, e.g., People v Leyra,* 1

NY2d 199, 209; *People v Yazum,* 13 NY2d 302, *rearg denied* 15 NY2d 679), and the weight to be accorded such evidence is solely for the jury to determine *(People v Yazum, supra).* The fact that defendant was seen leaving a major metropolitan hospital at the same time as Wolfe and then walked away from him as they exited is far from "compelling".

The majority also claims that the jury could have reasonably concluded that Wolfe gave the lab coat and syringes to defendant so as not to be found in possession of the incriminating evidence. The jury might have accepted these theories but also could have believed defendant's statement that he acquired the knapsack on the second floor when he went to use the bathroom, thereby disassociating himself from Wolfe. The housekeeper saw Wolfe leaving the medication room on the seventh floor, but never saw defendant before the trial of this matter. Although the security officer observed defendant leaving the building at the same time as Wolfe, and, although the lab coat and syringes were found inside the knapsack defendant was carrying, regardless of the persuasiveness of the evidence indicating guilt of the higher count, the question simply is whether on any reasonable view of the evidence it is possible for the trier of facts to acquit defendant on the higher count and still find him guilty of the lesser one *(People v Henderson, supra).*

The majority seems to reach its conclusion that the trial court properly denied defendant's request for a charge on trespass after weighing the credibility of both parties' contentions and finding the prosecution theory to be the most plausible. However, by doing so, the court is usurping the role of the jury whose function it is to evaluate credibility. We are not asked to determine whether the verdict was against the weight of the evidence. Instead, we are only called upon to determine whether the trial court improperly denied defendant the right to have the charge of trespass placed before the jury for its consideration.

"In order to be guilty of burglary for unlawful remaining, a defendant must have entered legally, but remain for the purpose of committing a crime after authorization to be on the premises terminates. And in order to be guilty of burglary for unlawful entry, a defendant must have had the intent to commit a crime at the time of entry. In either event, contemporaneous intent is required" *(People v Gaines,* 74 NY2d 358, 363). The Assistant District Attorney conceded at oral argument before this court that the only issue to be decided was

whether there was a reasonable view of the evidence to support a finding that defendant did not possess the requisite intent to commit a crime inside the building *at the time of his entry*. The People are contending that defendant entered the hospital with the intent to commit a crime.

Although the jury could have inferred a criminal purpose from the fact that the knapsack containing the lab coat and syringes was found on defendant's person at the time of his arrest, they were not required to do so *(see, People v Land,* 131 AD2d 883, *lv denied* 70 NY2d 752). The jury could have reasonably determined that defendant unlawfully entered the hospital for a noncriminal purpose, to use the bathroom, and that he lacked the intent to commit a crime. *(People v Csikortas,* 106 AD2d 578; *cf., People v Flores,* 113 AD2d 899, *lv denied* 66 NY2d 919.)* While defendant admitted to being on the second floor of the hospital, he denied that element which distinguishes burglary in the third degree from trespass, intent to commit a crime inside the building *(People v Martin,* 59 NY2d 704).

The majority's claim that defendant was not entitled to the trespass charge because he failed to "impugn by cross-examination the evidence offered by the People to establish circumstantially the element of his intent to commit a crime" in the hospital *(People v Woolard,* 124 AD2d 763, 764, *lv denied* 69 NY2d 751), completely ignores defendant's statement to the officer in which he maintained that he "got" the knapsack when he went to the second floor of the hospital to use the bathroom. Unlike the situation in *Woolard,* defendant's statements to the officer were synonymous with his contention that he entered the hospital for an innocent purpose.

There is no requirement that defendant take the stand in order to advance his claim of entitlement to the lesser included offense. To suggest otherwise would improperly shift the burden of proof. Contrary to the majority's contention, even though defendant did not testify at trial, his statements to the officer were sufficient to establish a reasonable view of the evidence mandating the submission of the requested charge on trespass. Providing such a charge would not have compelled the jury to resort to sheer speculation *(cf., People v Woolard, supra)* but rather, would have permitted the jury to determine defendant's intent at the time he entered the hospital. Since there was a reasonable view of the evidence that defendant committed trespass but not burglary I would reverse and remit the matter for a new trial.

ASCH and SMITH, JJ., concur with SULLIVAN, J. P.; ROSEN-BERGER and ELLERIN, JJ., dissent in an opinion by ROSENBER-GER, J.

Judgment, Supreme Court, New York County, rendered on July 25, 1988, affirmed.