*1026 OPINION OF THE COURT
Lorraine S. Miller, J.
This case raises a novel question concerning the "pyramiding” or "bootstrapping” of two distinct statutory presumptions to sustain charges that defendant not only presumptively "possessed” weapons but that she also intended to use them unlawfully against another.
I. INTRODUCTION
The first, Penal Law § 265.15 (3), provides: "[t]he presence in an automobile * * * of any firearm * * * is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon * * * is found”.
The second, Penal Law § 265.15 (4), provides: "[t]he possession by any person of any * * * weapon * * * is presumptive evidence of intent to use the same unlawfully against another.”
The prosecution proceeded first on the theory that defendant possessed the weapons, because they were found in an automobile she was driving. The "presumption of possession” was then utilized, at the District Attorney’s direction, to invoke the second presumption, i.e., one who "possesses” weapons is presumed to intend to use them unlawfully against another.
Defendant asserts that the "bootstrapping” of one presumption onto another presumption, in a vacuum, without any independent, rational facts to support a finding of intent (a prerequisite to criminal possession of a weapon in the second degree) requires dismissal of the charges. This court agrees.
The circumstances giving rise to this indictment serve to highlight the validity of defendant’s contention.
II. THE FACTS
On August 23, 1991, defendant Gilmarg Dumas, her husband Tommy Dumas, and an associate Douglas Williams, drove from North Carolina to Brooklyn, New York. Defendant was driving, her husband was in the front passenger seat. Mr. Williams was seated in the rear with six loaded guns in a duffel bag. (A seventh loaded gun was under the driver’s seat.)
At approximately 1:30 a.m., Mr. Dumas asked Williams to show him one of the guns. Williams reached into the duffel bag and withdrew one of the guns, which fired. The bullet *1027 passed through the front seat and hit Mr. Dumas in the back, killing him. Williams threw the gun back into the duffel bag. Defendant located a police officer and shouted that her husband had been shot. When the officer noticed a live round lying in the back of the car, he ordered defendant and Williams out of the vehicle, conducted a full search of the automobile and recovered all seven weapons.
Defendant and Williams were arrested and separately indicted for seven counts of criminal possession of a weapon in the second degree, seven counts of third degree possession and one count of criminal sale of a firearm in the second degree.[1] Defendant, as noted, now moves to dismiss the second degree possession counts based upon the allegedly improper invocation of the two statutory presumptions.
III. DISCUSSION
A criminal presumption permits, but does not require, a fact finder to infer the existence of an unproven fact (the presumed fact) from the introduction of actual evidence regarding another fact (the proved fact).
Presumptions must be carefully scrutinized before they will be allowed to operate against an accused since there is a real and substantial possibility that they will conflict with the overriding, more fundamental presumption of innocence accorded every defendant (see, Leary v United States, 395 US 6). Indeed, the United States Supreme Court recognized that a statutory presumption cannot be sustained if there is no rational connection between the fact proved and the fact presumed. Therefore, in scrutinizing the viability of a presumption, the court must determine, with substantial assurance, that the presumed fact is more likely than not to flow from the proved fact upon which it is made to depend (Leary v United States, supra, at 33, 36). Accordingly, the prosecution must provide the fact finder with real, objective proof from which logical inferences can be drawn (see, People v Lemmons, 40 NY2d 505).
The instant case poses a unique problem in that the prosecution advanced two statutory presumptions, in tandem, to support the ultimate conclusion that defendant both possessed *1028 and intended to use the weapons unlawfully against another. However, the prosecution presented no independent proof nor any articulable facts from which a finding of intent to unlawfully use could be drawn. Instead, the prosecution constructed these charges by positing the automobile-possession presumption as a foundation for the presumption that if one "possesses” weapons, he is presumed to intend to use those weapons unlawfully against another. By so doing, the prosecution led the Grand Jury to base an inference on an inference, in an effort to establish indirectly, what it could not prove directly, i.e., that defendant harbored an unlawful intent.
The impropriety of basing inference upon inference has been the subject of commentary (see, Annotation, Modem Status of the Rules Against Basing an Inference Upon an Inference or a Presumption Upon a Presumption, 5 ALR3d 100, 105). The general prohibition against pyramiding inferences has been explained as an expression of judicial distrust of "tenuous reasoning or of reliance upon remote or unfounded * * * conclusions” (supra, at 106). Several jurisdictions have invoked this rule in overturning convictions which were based upon the "bootstrapping” of inferences (see, Malloy v United States, 246 A2d 781 [DC]; State v Williams, 630 P2d 694 [Kan]; State v Gonzales, 533 SW2d 268 [Mo]; In re Derek, 448 A2d 765 [RI]). The New York Court of Appeals has expressed similar concerns although it has not squarely addressed the precise issue raised herein (see, People v Razezicz, 206 NY 249, 269 [conviction for murder in the first degree overturned where "the principal circumstance urged from which to infer guilt is wholly based upon an underlying * * * inference”]; People v Kennedy, 32 NY 141, 146 [in which the Court held: "(circumstantial evidence * * * consists in reasoning from facts which are known or proved, to establish such as are conjectured to exist; but the process is fatally vicious if the circumstance from which we seek to deduce the conclusion depends itself upon conjecture”] [emphasis supplied]; see also, People v Fitzgerald, 156 NY 253, 258; People v Salino, 139 Misc 2d 386; People v Wade, 122 Misc 2d 50).
A similar impediment exists in this case. The question of whether defendant possessed weapons was not answered by reference to actual facts establishing physical possession, but by reliance upon the automobile presumption. The presumed fact of possession was then used to activate the "intent presumption”. No other facts or circumstances were adduced to support the theory that defendant intended to use seven *1029 weapons unlawfully against another. The prosecution never alleged that defendant, at any point, physically possessed any of the weapons or that she even touched them. Six of the weapons were found in a duffel bag in the back seat of the car. The weapon which killed Tommy Dumas went off accidentally, while in the hands of another individual. Defendant was not charged with having participated in the homicide. Indeed, Mr. Williams, the back seat occupant, was not even indicted under an intentional homicide theory. Moreover, after the shooting, defendant actively sought the assistance of a police officer to obtain medical treatment for her husband (despite the great risk that she would be arrested — a risk which ultimately materialized). In sum, the hypothesis of this case, from the outset, was that defendant and her cohorts intended to sell weapons;[2] not use them against another.
While courts generally permit the introduction of proof of circumstances that may have "a fair and legitimate influence in determining the question involved” (see, People v Razezicz, supra, at 270), the unsupportable "coupling” of two statutory presumptions, as occurred in this case, had the effect of preordaining a conclusion which the Grand Jury could never have reached by legally sufficient independent evidence. As noted by one commentator: "[sjtatutorily enacted * * * permissive inferences have received the official imprimatur of the state; they have been enshrined in official rules of law expressed in formal legal language. These official actions convey disproportionate authority and carry more weight with juries than other items of admissible evidence” (see, Collier, The Improper Use of Presumptions in Recent Criminal Adjudication, 38 Stan L Rev 423, 442 [1986]). After scrutinizing the Grand Jury minutes, it is clear to this court that the finding that defendant intended to use the weapons unlawfully against another did not flow naturally, logically or rationally *1030 from any proven facts, but was based entirely upon the impermissible "bootstrapping” of presumptions. If the defendant had been the actual shooter or if she had physically possessed the weapons, a different result might ensue (see, People v Coluccio, 170 AD2d 523, lv denied 77 NY2d 993; People v Gillespie, 168 AD2d 567, lv denied 77 NY2d 961; People v Lee, 154 AD2d 399, lv denied 75 NY2d 772; People v Wooten, 149 AD2d 751, lv denied 74 NY2d 822; People v Wynn, 108 AD2d 768). Indeed, if there had been a scintilla of evidence which might rationally support a charge that she intended to use the weapons, this indictment would be sustained (see, Matter of John N., 168 AD2d 386; People v Evans, 106 AD2d 527). Here, the "intent” charges were proffered merely because defendant was present in the automobile, in which weapons were found. This, alone, was insufficient. (See, People v Nieves, 135 AD2d 579, lv denied 71 NY2d 1031; People v Cummings, 131 AD2d 865; People v Wade, 122 Misc 2d 50, supra.)
In conclusion, while this court finds a sufficient basis in fact to support the rebuttable presumption that defendant possessed weapons[3] (in that she appears to have knowingly participated in their transport from North Carolina to Brooklyn), there is no rational basis to invoke the further presumption that she also intended to use those weapons unlawfully against another.
Accordingly, the respective counts of the indictment charging defendant with criminal possession of a weapon in the second degree are dismissed.

. Mr. Williams was also charged with murder in the second degree and manslaughter in the second degree based on the theory that he recklessly caused the discharge of the weapon that killed Tommy Dumas. Mrs. Dumas was not charged with the homicide.

. In this regard, it is significant that defense counsel does not challenge the substantive propriety of the criminal sale of a firearm in the second degree count, which was based on the presumption that the possession of five or more firearms by any person is presumptive evidence that such person possessed the firearms with the intent to sell the same (Penal Law § 265.15 [6]). Defendant’s claims regarding the "bootstrapping” of presumptions have not been lodged with respect to the second degree sale charge. Indeed, defense counsel has tacitly conceded that the factual context of this case, particularly the presence of more than five firearms in the vehicle, is sufficient to withstand a dismissal motion since there is the requisite "rational connection” between the facts and the acting in concert sale count.

. The criminal possession of a weapon in the third degree and criminal sale of a firearm in the second degree charges have been properly represented to the Grand Jury so as to rectify defects in the original charge regarding the permissive nature of the statutory presumptions (see, People v Williams, 136 AD2d 132).